(79 Misc. Rep. 5.)

### GEIGER v. RAPAPORT.

(Supreme Court, Appellate Term, First Department.   January 9, 1913.)

1. MASTER AND SERVANT (§ 40*)—DISCHARGE OF SERVANT—ACTIONS—EVIDENCE.

In an action by an employé for wrongful discharge, evidence *held* to support a finding that the employer was not justified in discharging the employé.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 47–49; Dec. Dig. § 40.*]

2. APPEAL AND ERROR (§ 204*)—EVIDENCE—OBJECTIONS—NECESSITY.

A party may not complain of evidence received without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 149, 1258–1272, 1274–1278, 1280, 1569; Dec. Dig. § 204.*]

3. APPEAL AND ERROR (§ 1033*)—FAVORABLE INSTRUCTIONS—CAUTIONARY INSTRUCTIONS.

The refusal to charge that no inference could be drawn by the jury against a party because of his failure to call a witness present in court during the trial was not erroneous, where the court gave instructions more favorable to the party than he was entitled to.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

4. MASTER AND SERVANT (§ 39*)—DISCHARGE OF SERVANT—ACTIONS—ISSUES.

Where, in an action by an employé for his wrongful discharge, the only issue under the pleadings was whether the employer discharged the employé, the employer could not prove a justification of the discharge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 12, 45, 46; Dec. Dig. § 39.*]

5. MASTER AND SERVANT (§ 40*)—WRONGFUL DISCHARGE—JUSTIFICATION—BURDEN OF PROOF.

An employer, who, when sued by an employé for a wrongful discharge, pleads justification, has the burden of establishing the defense.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 47–49; Dec. Dig. § 40.*]

Appeal from City Court of New York, Trial Term.

Action by Samuel Geiger against Jacob Rapaport.   From a judgment for plaintiff, defendant appeals.   Affirmed.

See, also, 137 N. Y. Supp. 753.

Argued December term, 1912, before SEABURY, GUY, and GERARD, JJ.

Henry Fluegelman, of New York City (M. S. Bevins, of New York City, of counsel), for appellant.

Max D. Steuer, of New York City (Julian Arthur Leve, of New York City, of counsel), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SEABURY, J. Plaintiff sues to recover damages for the breach of a written contract of employment, and the answer admits the contract and denies the other allegations of the complaint.

[1] Knowledge of the conditions existing in the defendant's shop shortly before the time of the discharge is essential to an understanding of the case. The plaintiff was employed as an operator and tailor. The defendant was a manufacturer of cloaks and suits. From July 7 to September 2, 1910, there was a general strike in the cloak-making trade in this city. During the strike, the plaintiff, although frequently threatened with personal violence, continued to work under his contract, and during that time he slept in the defendant's factory, and his meals were brought to the factory to him. On September 2, 1910, the unions and the manufacturers settled the strike by entering into a formal agreement, which is called a "protocol." This protocol made provision for securing sanitary conditions in the shops, fixed a minimum weekly scale of wages, and contained other provisions affecting the conditions under which work in this trade was to be done. Among other things, it provided that:

"In the future, there shall be no time contracts with individual shop employés, except foremen, designers and patent graders."

It also provided that:

"Each member of the manufacturers is to maintain a union shop; a 'union shop' being understood to refer to a shop where union standards as to working conditions, hours of labor, and rates of wages as herein stipulated prevail, and where, when hiring help, union men are preferred—it being recognized that, since there are differences in degrees of skill among those employed in the trade, employers shall have freedom of selection as between one union man and another, and shall not be confined to any list, nor bound to follow any prescribed order, whatever. It is further understood that all existing agreements and obligations of the employers, including those to present employés, shall be respected. The manufacturers, however, declare their belief in the union, and that all who desire its benefits shall share in its burdens."

After the strike was settled, the defendant persuaded the plaintiff to join a union, which the plaintiff was permitted to do upon paying a fine to the union of $25, which the defendant advanced, upon condition that he should reimburse himself by deducting $5 a week from the wages of the plaintiff. On October 1, 1910, a dispute occurred in the defendant's shop, because the employés were asked to work on a garment in reference to which the price to be paid had not been agreed upon. According to the plaintiff, there was an angry dispute between the workmen and the defendant, and the workmen started to leave the shop. The plaintiff went to the defendant, and asked him what he should do, and the defendant told him he had better go with the others, and that he would not lose anything by so doing. The defendant admits that the disturbance testified to by the plaintiff occurred, but denies that he told the plaintiff he could leave with the other workmen. The contention of the defendant is that he told the plaintiff that, if he left, he would not take him back again. This disturbance occurred on Saturday morning, and on the Monday following, when the plaintiff re-

turned, the defendant refused to allow him to work. The plaintiff was corroborated by several witnesses, and the defendant called several of his own employés to corroborate his version of the occurrence.

After a careful review of the whole record, we have come to the conclusion that the verdict of the jury should not be disturbed. There are several significant circumstances disclosed in the record, which tend very strongly to corroborate the plaintiff. Before the settlement of the strike, it was clearly to the defendant's interest to employ the plaintiff under a written contract, and during the whole of the turbulent period of the strike it is conceded that the plaintiff performed his duty under his contract. The point of view and interest of the defendant necessarily changed after the signing of the protocol. From that time on, the interest of the defendant would be promoted by employing only union men, and from that date the efforts of the defendant to get rid of the plaintiff are plainly disclosed by the record. On September 27, 1910, two men went to the plaintiff and asked him to sign a paper, addressed to the defendant, which was as follows:

"I find it disagreeable to work under the contract as a week worker, while all the other workers are piece workers. I think I will make out as much as a piece worker, and the people who work in your shop will feel more friendly towards me. I would like to join the union and give up the contract which I have with you. Will you please agree that the contract which I have made with you be terminated as soon as I join the union, and that I work as a piece worker?"

The plaintiff testified that the two men who presented this paper to him to sign did so in the defendant's shop and in the defendant's presence, with the admonition that, if he did not comply:

"They will take you down a dead man. You will have to sign the paper."

To this request the plaintiff replied:

"You will have to take me down a dead man. I am not going to break my contract."

It was proven upon the trial, without objection, that the other employés of the defendant who were working under a written contract had an experience similar to that of the plaintiff, and that they were all asked to sign the letter quoted above. The fact that the plaintiff was asked to sign this letter, and was threatened with violence if he did not do so, and that the requests and threats were made to him in the defendant's shop and in the presence of the defendant, plainly indicate the defendant's attitude, and make it clear that the defendant desired the plaintiff to abandon the contract. The refusal of the plaintiff on September 27th to abandon his contract indicates that he would not willingly have repudiated it on October 1st, as the defendant testified.

Having continued to work for the defendant throughout the whole period of the strike, we find it difficult to believe that he voluntarily left the defendant's employ because of the comparatively slight disagreement which took place between the defendant and his other union employés on October 1st. The fact appears to us to be, as we have

no doubt it did to the jury, that, as the defendant had failed in his efforts to induce the plaintiff to abandon his contract, he seized the first opportunity which presented itself of getting rid of him. It is noticeable, also, that he did not do this until the plaintiff had worked with him, after the settlement of the strike, long enough to enable him to reimburse himself out of the plaintiff's wages for the amount of the fine which the union imposed upon the plaintiff. We are satisfied, from a review of all the evidence, that the verdict of the jury was proper.

[2] It is urged that the judgment should be reversed because a witness was permitted to testify that the letter quoted above was seen by him at the office of the union, and that he (the witness) was compelled to sign it. This evidence was received without any objection being made to it. By failing to object to its introduction, the defendant consented to its admission. In view of the evidence given by the plaintiff in relation to the same subject, its admission could not be deemed prejudicial even if it had been objected to and an exception duly taken.

[3] It is also urged that the judgment should be reversed, because the court below refused the request of counsel for the defendant to charge that no inference could be drawn by the jury against the defendant because of his failure to call a witness who was present in the court during the trial. While we are of the opinion that the charge requested might well have been made, the failure of the court to give any charge at all on the subject was not an error prejudicial to the rights of the defendant. The charge of the court, when considered as a whole, was more favorable to the defendant than he was entitled to.

[4, 5] Under the pleadings, the only issue in the case was whether the defendant discharged the plaintiff. The answer did not plead that the defendant was justified in discharging the plaintiff. Upon the trial, the fact that the defendant discharged the plaintiff was not disputed, and the only question contested was whether or not the defendant was justified in discharging him. The court below not only submitted the case to the jury upon this theory, thus giving the defendant a benefit which, under his pleadings, he was not entitled to (Linton v. U. F. Co., 124 N. Y. 533, 536, 27 N. E. 406), but went further, and charged the jury that the burden of proof was upon the plaintiff, and, if they found the evidence of the parties "equally trustworthy," they must find a verdict for the defendant. Under the pleadings, the defendant had no right to attempt to prove justification, and, even if he had pleaded such a defense, the burden of establishing that defense was upon him. Linton v. U. F. Co., supra. The charge of the court required the plaintiff, not only to prove his own case, which was not disputed upon the trial, but to sustain the burden of proof in negativing the defense upon which the defendant was permitted to offer proof, although no such defense had been pleaded. Severe as this burden was, we are satisfied that the plaintiff fully sustained it.

Judgment affirmed, with costs. All concur.